[Cite as *State v. Crisp*, 2012-Ohio-1730.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 10CA3404 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| Mark Crisp, | : | |
| Defendant-Appellant. | : | **RELEASED 04/03/12** |

_____
<u>APPEARANCES</u>:

Timothy Young, Ohio State Public Defender, and Jeremy J. Masters, Ohio State Assistant Public Defender, Columbus, Ohio, for appellant.

Mark Kuhn, Scioto County Prosecutor, Portsmouth, Ohio, for appellee.
_____
Per Curiam

{¶1}    Amber Howard, a 21-year-old pregnant mother, disappeared in 2007 and months later her skeletal remains were discovered in a state park.  After authorities found Howard's blood and DNA in  Mark Crisp's former rental home, he was convicted of: (1) the murder by termination of Howard's pregnancy and the felonious assault of her unborn fetus; (2) the murder of Howard and the murder by termination of her pregnancy; (3) tampering with evidence by concealing Howard's body and gross abuse of a corpse by burying her body in a shallow grave.

{¶2}    Crisp contends that he committed these respective crimes with the same conduct and thus, the trial court was required to merge them at sentencing under Ohio's multiple-count statute.  The state candidly concedes that the murder by termination of Howard's pregnancy and the felonious assault to her unborn fetus required merger as

the evidence indicated that Crisp terminated the pregnancy by causing significant trauma to the unborn child in a single attack and with a single animus. We agree.

{¶3} But Howard's murder and murder by the unlawful termination of her pregnancy do not require merger even though the same conduct arguably led to the completion of both crimes. Because Crisp knew that if he killed Howard he would also terminate the pregnancy, we conclude the two crimes were each committed with a separate animus.

{¶4} We also conclude that the trial court was required to merge Crisp's conviction for tampering with evidence and gross abuse of a corpse in light of the State's concession that it relied on the same acts in support of both charges and its failure to identify a separate animus for each crime.

{¶5} Accordingly, we remand this case for resentencing on the murder by termination of pregnancy and the felonious assault of Howard's unborn fetus and on the tampering with evidence and gross abuse of a corpse.

## I. Summary of the Evidence

{¶6} Two days prior to her disappearance on August 10, 2007, Amber Howard visited a clinic and tested positive for pregnancy. At the trial her mother, grandmother, and a pregnancy clinic worker testified that she was "showing." However, both also indicated Howard was slight in build and only had what one of them described as a "pop belly", i.e., she was in the early stages of pregnancy.

{¶7} The night she disappeared Amber Howard, Mary Howard (her mother) and Mark Crisp, "partied" and smoked crack together at Mary Howard's residence in Portsmouth, Ohio. Around midnight, Amber Howard left the residence in a vehicle

driven by Mark Crisp to obtain more crack cocaine. No one saw or heard from her again. Crisp later told Mary Howard and Amber Howard's grandmother that he dropped Amber off in Portsmouth that night, although he told both women inconsistent stories about where that drop-off occurred.

{¶8}    A week later, law enforcement authorities in Scioto County opened a missing person investigation, which made little progress for many months. Then in the spring of 2008, a mushroom hunter located a human skull in Shawnee State Park. Law enforcement recovered the skull and other skeletal remains, which were scattered over a large area, apparently due to animal activity. Investigators sent the remains to Ohio's Bureau of Criminal Investigation (BCI) for analysis, where employees matched DNA found on the remains to Howard's known DNA profile.

{¶9}    Months later, Detective Triggs of the Scioto County Sheriff's Department, received a tip that a Jennifer Lindsey (a former girlfriend and acquaintance of Mark Crisp) had information about Howard's disappearance. When detectives interviewed Lindsey, she told them of a possible crime scene in a rental home that Crisp occupied at the time of Howard's disappearance.

{¶10}  Detectives searched the vacant rental home and located a small rectangular area in Crisp's former bedroom corner where the carpeting and floorboards had been removed, revealing the baseboards. Some of the carpet around this area had apparent bleach stains. The drywall in the same corner was cracked and impacted, as if a large object collided with it. A test conducted by a BCI agent detected blood in carpet fibers, baseboards, and on the impacted drywall. The agent removed these materials and sent them to BCI for further analysis. Forensic analysts at BCI matched

blood found on the carpet fiber and baseboards to Amber Howard's DNA profile.  They could not obtain a DNA profile from the drywall.

{¶11}  Detectives also obtained a search warrant for a Geo Tracker automobile that Crisp allegedly drove at the time Howard went missing.  The BCI agent located blood in the rear cargo carpeted area of the car.  BCI forensic analysts later positively matched this blood with Howard's DNA.

{¶12}  Detective Triggs then interviewed Crisp, who admitted "partying" and smoking crack with Amber Howard on the night of August 10, 2007 at Mary Howard's residence.  But he denied leaving with Amber Howard and also claimed that she had never been in the home he rented in 2007.  Crisp admitted driving a Geo Tracker in 2007.  When asked why floorboards and carpeting were missing from the bedroom, Crisp admitted removing these items as the result of a fallen candle, which caused a fire.

{¶13}  Detective Triggs then told Crisp that law enforcement found Amber Howard's blood and DNA in his home.  Crisp could not explain the presence of Howard's blood or DNA and repeatedly denied knowing anything about her disappearance and murder.

{¶14}  The state indicted Crisp and charged him in Count One of murder with the underlying crime being felonious assault, which was separately charged in Count Three of the indictment.  In Count Two, the state charged Crisp with murder by unlawful termination of pregnancy.  Count Four charged Crisp with another felonious assault relating to Howard's unborn fetus.  The remaining counts relevant to this appeal are:

Count Six, tampering with evidence, concerning Crisp's attempt to "conceal" Howard's corpse; and Count 8, gross abuse of her corpse.

{¶15}  After the jury found Crisp guilty of these charges, the trial court merged Count Three, the felonious assault of Howard, with Count One, her murder, but refused to merge any of the remaining convictions.  After the court sentenced him to a long prison term, Crisp filed this appeal.

## II. Assignment of Error

{¶16}  Crisp assigns one error:

{¶17}  The trial court erred when it imposed separate sentences for offenses that arose from the same conduct, were not committed separately or with a separate animus, and should have been merged for sentencing purposes under R.C. 2941.25. (October 18, 2010 Transcript, pp. 714-715; November 17, 2010 Judgment Entry, pp. 1-7.)

## III. Merger

{¶18}  Crisp argues that the trial court erred by failing to merge the following convictions at sentencing: (1) Count Two and Count Four, murder by termination of pregnancy and felonious assault to Howard's unborn; (2) Count One and Count Two, murder of Howard and murder by termination of pregnancy; and (3) Count Six and Count Eight, tampering with evidence and gross abuse of a corpse.

### A.  Evolution of the Merger Test

{¶19}  The Double Jeopardy Clause of the United States Constitution prohibits multiple punishments for the same offense.  *United States v. Halper* (1989), 490 U.S. 435, 440, 109 S.Ct. 1892, citing *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 89

S.Ct. 2072.  To this end, the Ohio General Assembly enacted Ohio's multiple-count statute in R.C. 2941.25, which subjects "allied offenses of similar import" to the judicial concept of "merger" at sentencing.  It provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

**{¶20}**  The Committee notes explain:

This section provides that when an accused's conduct can be construed to amount to two or more offenses of similar import, he may be charged with all such offenses but may be convicted of only one.  If his conduct constitutes two or more dissimilar offenses, or two or more offenses of the same or similar kind but committed at different times or with a separate "ill will" as to each, then he may be charged with and convicted of all such offenses.

The basic thrust of the section is to prevent "shotgun" convictions.  For example, a thief theoretically is guilty not only of theft but of receiving stolen goods, insofar as he receives, retains, or disposes of the property he steals.  Under this section, he may be

charged with both offenses but he may be convicted of only one, and the prosecution sooner or later must elect as to which offense it wishes to pursue. On the other hand, a thief who commits theft on three separate occasions or steals different property from three separate victims in the space, say, of 5 minutes, can be charged with and convicted of all three thefts. In the first instance the same offense is committed three different times, and in the second instance the same offense is committed against three different victims, i.e. with a different animus as to each offense. Similarly, an armed robber who holds up a bank and purposely kills two of the victims can be charged with and convicted of one count of aggravated robbery and of two counts of aggravated murder. Robbery and murder are dissimilar offenses, and each murder is necessarily committed with a separate animus, though committed at the same time. Legislative Service Commission Summary of Am.Sub.H.B. 511 (1973).

{¶21} Through a series of opinions the Supreme Court of Ohio has advised (and re-advised) lower courts on the difficult task of applying Ohio's multiple-count statute to determine which criminal convictions require merger. Generally, the court prescribed a two-part test, although the specifics of the test have changed over time. The first step calls for a comparison of the elements of the crimes at issue and the second step analyzes the defendant's conduct to determine whether the state used the same conduct to support both crimes. See *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816. Recently, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court expressly overruled its then current test for merger, which the Court issued more than a decade earlier in *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.

**{¶22}** In *Rance*, the Court advised lower courts to apply R.C. 2941.25 by first comparing the elements of the multiple counts at issue "in the abstract." Id. at 638. If the elements of the offenses corresponded to such a degree that the commission of one crime resulted in the commission of the other, the crimes could be "allied offenses of similar import." Id. Over time, the "abstract comparison" test set forth in *Rance* proved "inconsistent, unreliable, and, at times" produced "absurd results." *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, at ¶20. Thus, the *Johnson* Court overruled *Rance* "to the extent that it calls for a comparison of statutory elements solely in the abstract" to determine whether offenses are subject to merger under R.C. 2941.25. *Johnson* at ¶ 44. Now, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." Id. at syllabus.

**{¶23}** Under the Johnson analysis the trial court must first determine prior to sentencing whether the offenses can be committed by the same conduct. This inquiry does not involve an abstract comparison of the elements of the offenses. It is sufficient to determine whether it is possible to commit one offense and also commit the other offense with the same conduct. Under *Johnson* the test becomes one of the possibility of simultaneous occurrence rather than the impossibility of dual culpability. If the offenses are so alike that the same conduct can subject the accused to potential culpability for both, they are "of similar import".

**{¶24}** Having determined that it is possible to commit multiple offenses by the same conduct, the court must then determine whether in fact they actually were committed by the same conduct, i.e. committed as a single act with a single animus. If

so, merger is necessary.  However, if the offense resulted from separate acts or with a separate animus, or the commission of one offense can never result in the commission of the other, merger is not applicable.  Id at ¶47-51.

**{¶25}**  With this new test in mind, we analyze Crisp's arguments for merger under a de novo standard of review.  See, *State v. Robinson* (Apr. 1, 1997), Meigs App. No. 96CA16, 1997 WL 158272, at *2.

B.  Murder and Felonious Assault

**{¶26}**  First Crisp argues that the court erred by failing to merge Count Two, murder by unlawful termination of pregnancy, and Count Four, the felonious assault of Amber Howard's unborn fetus.  Crisp argues that the evidence introduced at trial failed to establish that he committed these crimes separately or with more than a single animus.  The state argued in its brief the evidence at trial demonstrated a significant physical confrontation occurred between Crisp and Howard at his residence, which allowed the inference that the Howard received multiple blows, some of which separately caused the unlawful termination of her pregnancy and some of which caused the felonious assault of the fetus.  However, the State candidly conceded at oral argument that the crimes are allied offenses subject to merger.  We agree.

**{¶27}**  Applying the first prong of the *Johnson* analysis, we conclude that it is possible to commit the offense of murder by unlawful termination of pregnancy and the offense of felonious assault with the same conduct.  Simply put, one could commit a felonious assault under R.C. 2903.11(A)(1) which is defined as causing "serious physical harm to another or to another's unborn," and murder by unlawfully terminating a pregnancy (defined R.C. 2903.02(A) as "purposely" causing "the unlawful termination

of another's pregnancy") with the same violent criminal act, e.g., by striking a pregnant woman with sufficient force to harm the fetus and terminate the pregnancy. Thus, these are crimes of similar import under R.C. 2941.25(A). *Johnson* at ¶48.

**{¶28}** Next, we must consider whether Crisp committed these offenses with the same conduct, i.e., a single act committed with a single state of mind. The evidence presented at trial suggested an act of violence occurring in one corner of Crisp's bedroom. As we noted in the factual summary, police located blood on baseboards in the section of the bedroom where Crisp removed the carpet and floorboards. Police also identified blood on a section of wall that appeared to have been damaged by a large impact, presumably Howard's body.

**{¶29}** We conclude that the evidence in this circumstantial case supports the conclusion that Crisp attacked Howard in his bedroom and that she lost a considerable amount of blood during the attack. The evidence indicated that Howard would have had to lose a considerable amount of blood for it to seep through both carpet and floorboards and come to rest in between the cracks of the baseboards. Thus, the reasonable inference from this evidence is that Howard's unborn child suffered serious physical harm and her pregnancy terminated during or as a direct result of this one attack in the bedroom.

**{¶30}** There is no evidence, circumstantial or direct, to support an inference that a separate assault, whether in terms of time or location, took place and independently caused serious physical harm to the unborn or caused the pregnancy to terminate. Thus, the only reasonable inference is that the termination of Howard's pregnancy and the felonious assault to the fetus occurred in the same attack, which ultimately also

killed Howard. We cannot conclude that during the attack Crisp delivered multiple blows, each of which constitute "separate" conduct to support each Count. In fact, the *Johnson* court also rejected the invitation to "parse" the defendant's conduct into a "blow-by-blow" to sustain separate convictions for felony murder and child abuse. Id. at ¶56. In *Johnson*, the witness did not see but heard the defendant beating her seven-year-old son and described it as a "thump" or "stomp." Id. at ¶54. The court described the beating occurring there as one "discrete act" that simultaneously resulted in the commission of both offenses. Id. at ¶56. Here, there were no witnesses to the crime other than Crisp and the evidence at best supports the inference of one discrete attack that simultaneously, caused serious physical harm to Howard's unborn child, and caused her pregnancy to terminate.

{¶31} We also conclude that the record lacks any evidence to establish more than a single animus for the attack in Crisp's bedroom. There is nothing in the record from which we could infer that Crisp possessed more than one purpose in causing serious physical harm to Howard's unborn and unlawfully terminating her pregnancy.

{¶32} Consequently, we conclude that Crisp committed the offenses of murder by unlawful termination of pregnancy and felonious assault with the same conduct and animus. Accordingly, the trial court erred by failing to merge these offenses.

C. Murder and Murder by Unlawful Termination of Pregnancy

{¶33} Next Crisp argues that the court erred by failing to merge his convictions for Count one, the murder of Amber Howard, and Count Two, murder by unlawful termination of her pregnancy. Crisp contends that the evidence shows that he unlawfully terminated Howard's pregnancy and murdered her with the same conduct.

The state argues that evidence showed that Howard was visibly pregnant, and the reasonable conclusion is that Crisp was aware of this fact and separately intended to terminate her pregnancy. Thus, a separate "animus" supports each crime.

**{¶34}** Applying the first prong of the *Johnson* test, we conclude that it is possible to commit murder and murder by unlawful termination of pregnancy with the same conduct. Murder, as defined in R.C. 2903.02(B), prohibits causing the death of another as a proximate result of the offender's committing or attempting to commit a violent felony. R.C.2903.02(A) prohibits purposely causing "the death of another or the unlawful termination of another's pregnancy." One who commits a violent felony that proximately results in the death of a pregnant individual may also unlawfully terminate that individual's pregnancy with the same conduct. Thus, these are crimes of "similar import." See *Johnson* at ¶48.

**{¶35}** Next, we consider whether the offenses at issue here actually were committed by the same conduct under R.C. 2941.25(A), i.e., a single act committed with a single state of mind. As noted in Section B., the evidence supports the conclusion that Crisp murdered Howard in his bedroom, which contained evidence of a bloody attack in one corner. However, there is no evidence from which one could infer that the murder of Howard and the unlawful termination of her pregnancy occurred separately. As the state admitted in its closing arguments, the only reasonable interpretation of the evidence is that by committing the attack in his bedroom that led to the death of Amber Howard, Crisp unlawfully terminated her pregnancy (Tr. P. 643-644).

**{¶36}** However, we agree with the state's contention that because Howard was pregnant and "showing," we can infer that Crisp possessed a separate animus for

terminating her pregnancy. That is, due to Howard's obvious pregnancy, Crisp had to know that if he killed Howard, the unborn fetus would surely perish too. In situations where a defendant has knowledge that more than one victim could be harmed, courts have concluded there is a separate animus for each victim at risk. See *State v. Jones* (1985), 18 Ohio St.3d 116 and *State v. Williams* 1996), 115 Ohio App.3d 24. Thus, we conclude merger does not apply.

### D. Tampering with Evidence and Gross Abuse of a Corpse

**{¶37}** Finally, Crisp argues that the court erred by failing to merge Count Six of the indictment, tampering with evidence, and Count Eight of the indictment, gross abuse of a corpse.[1] Crisp argues that his conduct of disposing Howard's body in Shawnee State Park constituted both offenses. In its brief the state admits that "Appellant is correct that the conduct of Appellant in removing the body of Amber Howard from his residence and concealing [it] in the state forest are acts of the Appellant that the state relied upon and argued in support of both charges." In other words, the state concedes it is possible to commit both crimes with the same conduct.

**{¶38}** We agree that it is possible to commit the offense of gross abuse of a corpse, a violation of R.C. 2927.01(B), and tampering with evidence, a violation of R.C. 2921.12(A)(1) with the same conduct. Gross abuse of a corpse required the state to prove that Crisp treated a "human corpse in a way that would outrage reasonable community sensibilities." Tampering with evidence prohibits the concealment of any

---

[1] Crisp claims he was convicted only of "abuse of a corpse," a misdemeanor, as opposed to "gross abuse of a corpse," which is a felony. Although the trial court referred to the jury finding Crisp guilty of "abuse of a corpse" in the judgment entry, it is clear from the record that the state indicted Crisp for gross abuse of a corpse, a violation of R.C. 2927.01(B), and the trial court instructed the jurors accordingly. Moreover, the judgment entry, while mistakenly referring to "abuse of a corpse" also refers to R.C. 2927.01(B) as the code section violated and finds Crisp guilty of a felony of the fifth degree.

"thing" "with purpose to impair its value or availability as evidence in such proceeding or investigation." Applying *Johnson*, we conclude that one could commit both of these crimes with the same conduct, e.g., by burying a human corpse in a manner that would outrage community sensibilities with the purpose to conceal evidence. Thus, these are crimes of similar import. *Johnson* at ¶48.

{¶39} Next, we consider whether Crisp committed each crime separately or with a separate animus. The state tries to distinguish the appellant's conduct by characterizing it as "incidental" in relationship to the tampering charge but "critical" to the gross abuse offense. We are not aware of any such mechanism of distinction in *Johnson*. In the absence of any evidence that the two crimes were committed separately or with a separate animus, we conclude that merger is appropriate. Therefore, we sustain this assignment of error.

## V. Conclusion

{¶40} We find merit in Crisp's argument that Count Two and Count Four of the indictment, felonious assault of Amber Howard's fetus and murder by unlawful termination of pregnancy are subject to merger. Likewise, the court erred by failing to merge Counts Six and Eight of the indictment. However, the trial court did not err by failing to merge Counts One and Two of the indictment as separate societal interests clearly indicate that the legislature intended multiple punishments for the same conduct constituting both offenses. Accordingly, we remand this case for resentencing on Counts Two and Four.

JUDGMENT AFFIRMED IN PART
AND REVERSED IN PART.

Kline, J., concurring.

**{¶41}** I concur in judgment and opinion. However, I write separately to address the following issues raised by the partially concurring and dissenting opinion (hereinafter the "Other Opinion"): (1) *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, and (2) the notion that I have relied on an inference upon an inference.

**{¶42}** First, the Supreme Court of Ohio held that, "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. And in my view, applying *Brown*'s different-societal-interests rationale decides the merger question without regard for the conduct of the accused. *See State v. LaPrairie*, 2d. Dist. No. 2010CA-0009, 2011-Ohio-2184, ¶ 45 (declining to apply *Brown*'s "preemptive exception to the merger rule" in light of *Johnson*). Therefore, I do not see how we can apply *Brown* without running afoul of *Johnson*.

**{¶43}** Furthermore, in finding that murder and murder by unlawful termination of pregnancy should not merge, I dispute the notion that I am relying on an inference upon an inference. Here, the jury found Crisp guilty of unlawful termination of pregnancy in violation of R.C. 2903.02(A). Because the mens rea for R.C. 2903.02(A) is purposely, the jury had to find that Crisp specifically intended to terminate Howard's pregnancy. *See* R.C. 2901.22(A). I believe that sufficient evidence supports Crisp's conviction under R.C. 2903.02(A). And in determining that Crisp had a separate animus for unlawful termination of pregnancy, I am relying on the jury's finding of specific intent.

**{¶44}** The Other Opinion, however, claims that an inference upon an inference is necessary to find that Crisp specifically intended to terminate Howard's pregnancy. Therefore, the Other Opinion essentially concludes (1) that the jury made an impermissible finding and (2) that insufficient evidence supports Crisp's conviction under R.C. 2903.02(A). *See, e.g.*, *State v. Bullard*, 11th Dist. No. 2009-T-0096, 2010-Ohio-3464, ¶ 36 (reversing a conviction because the jury relied on an inference upon an inference). "[D]ue process guarantee[s] * * * that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof[.]" *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Accordingly, in light of the Other Opinion's inference-upon-an-inference reasoning, I do not understand why the Other Opinion would not reverse Crisp's conviction for unlawful termination of pregnancy.

**{¶45}** Thus, I concur in judgment and opinion.

Harsha, J., concurring in part and dissenting in part:

**{¶46}** I cannot join in the conclusion that Crisp had a separate animus for murdering Howard and terminating the pregnancy. To draw this conclusion would constitute an inference upon inference, i.e., Crisp was aware of Amber Howard's pregnancy, which would be a logical deduction; and he possessed the separate intention to purposely terminate it based upon the deduction she was pregnant, which would not be a logical deduction. Therefore, the jury could not indulge in such reasoning. See *State v. Cowans*, 87 Ohio St. 3d 68, 78-80. However, I still conclude merger does not apply.

**{¶47}** I agree applying the test in *Johnson* would seem to require merger of these offenses. However, in my view Crisp has committed two distinct and cognizable wrongs, each of which the General Assembly intended to punish separately. As noted in Section III.A., the overriding purpose of R.C. 2941.25 is to avoid "shotgun convictions" and avoid implicating the Double Jeopardy Clause's prohibition of "double punishment" for the same offense. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶8. To this end, the merger statute only protects a defendant from multiple punishments not intended by the General Assembly. Id.

**{¶48}** In *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569 the Supreme Court discussed the importance of legislative intent in applying merger. There the court observed that its various merger tests, including the formulation set forth in *Rance*, were rules of statutory construction designed to determine legislative intent for the merger of offenses at sentencing. Id. at ¶35. And the court observed that the "societal interests" reflected by the prohibitions contained in the criminal offenses at issue could help

demonstrate whether the General Assembly intended multiple punishments for similar offenses. Id. at ¶36.  Most important, the court held that it is not necessary to resort to any test of statutory construction when the "legislature's intent is clear from the statute." Id. at ¶37.  Interestingly, *Brown* predated *Johnson*, but rather than overruling it, *Johnson* acknowledged *Brown* and pointed to it as an example of a case that provided a solution to the untenable merger test based in *Rance.*

{¶49}  *Johnson* is problematic in many regards, not the least of which is specific references to *Brown* without any explicit indication that it survives or has gasped its last breath.  It is hard to believe *Johnson* would cite both *Brown* and *Rance*, expressly overrule *Rance* in the syllabus and text, but leave *Brown* to die the ignamimous death of being over-ruled <u>sub</u> <u>silentio</u>.

{¶50}  *Johnson* resolved the following certified question: "Are the elements of child endangering [set forth in R.C. 2919.22(B)(1)] sufficiently similar to the elements of felony murder with child endangering as the predicate offense that the commission of the murder logically and necessarily also results in the commission of the child endangering?"  In giving rise to the conflict, the 1st District Court of Appeals applied *Brown* to conclude the two statutes involved the protection of separate societal interests, thereby allowing multiple punishments.  This holding conflicted with the holding in *State v. Mills*, Tuscarawas App. no. 2007 AP 0039, 2009-Ohio-1849, which used the *Rance*/*Cabrales* analysis to conclude merger was necessary, i.e. they may not be punished by multiple convictions and sentences.  *Mills* concluded that *Brown* was an expansion of the first step of the statutory allied offense analysis under *Rance/Cabreles*. *Mills* at ¶212.  However, *Johnson* has described *Brown* as a preemptive exception to

the R.C. 2941.25 statutory analysis. *Johnson* at ¶33. As we now know, *Johnson* jettisoned the comparison in the abstract of the elements analysis by expressly overruling *Rance*. What it did not do, is expressly overrule *Brown*. Rather it cited *Brown* at least twice without commenting on its viability. If the *Johnson* court intended to abandon *Brown*, it would have done so in the same manner it dispatched *Rance*, i.e., expressly.

{¶51} Thus, I conclude that *Brown* remains viable after *Johnson* because the Supreme Court of Ohio had the opportunity to expressly overrule or limit *Brown* but did not do so. *Brown* indicates that legislative intent, and not a prescribed "merger test," is the ultimate inquiry in analyzing a merger issue. Id at. ¶20, 35. The new focus on conduct has not replaced legislative intent as the "lodestar" of this analysis. See Johnson at ¶25. Moreover, the Supreme Court of Ohio's creation of yet another "rule of statutory construction" to aid in the merger analysis does not affect *Brown*'s holding that "societal interests" may help identify legislative intent.

{¶52} *Johnson*'s certified question does not address whether the *Brown* separate societal interest test is better suited then R.C. 2941.25 in determining legislative intent. It simply concludes that "when determining whether two offences are…subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St. 3d 632, 710 Ne 2d 699, overruled.)" (Emphasis supplied.) In other words, *Johnson* holds when you apply the statute, you look at conduct not elements in the abstract. It does not say *Brown*'s preemptive exception is no longer a viable test for determining legislative intent. Thus, where the

substantive statutes involved indicate a clear legislative intent to protect two separate societal interests, we need not resort to R.C. 2941.25.

{¶53} Here, I conclude that we need not resort to the merger test in *Johnson* in order to determine whether the legislature intended to permit multiple punishments for the offenses at issue. Instead, I simply conclude it is clear from both statutes that the General Assembly intended to protect different societal interests in each crime. First, murder as defined in R.C. 2903.02(B) prohibits causing the death of another as the result of committing a violent felony. The societal interest served by this statute is the protection of human life against deadly attacks. Murder as defined in R.C. 2903.02(A) prohibits "purposely causing * * * the unlawful termination of another's pregnancy." Clearly, this statute is designed to protect a separate societal interest, i.e., to prevent the termination of pregnancies, regardless of whether they are "viable", by purposeful criminal conduct. Therefore, I conclude the legislature intended to authorize multiple punishments in this context.

{¶54} Crisp also argues that merger was required because only one "statutory victim" was present in this case. He contends that the Revised Code defines a "victim" in 2901.01(B)(1) to include a "viable unborn." Crisp further contends that no evidence in the record revealed the viability of Howard's fetus. In essence, because the murder of Howard and the termination of her pregnancy resulted in one "statutory victim," the trial court should have merged the convictions. While this argument is novel, I fail to see the relevance of the fetus' viability, inasmuch as the murder statute, R.C. 2903.02(A) refers only to the termination of a "pregnancy." The statute has no requirement related to the viability of the pregnancy. Moreover, the word "person" appears in R.C. 2903.02 to

describe the individual charged with the crime ("No person shall purposely cause the death…").  In fact, the word "person" is used throughout the Revised Code to describe the offender.  The term "another" is often used to describe the victim, which might implicate the statutory definition of "person" by reference.  However, R.C. 2903.02(A) refers to "another's" pregnancy.

{¶55}  Here, the same conduct arguably supports both convictions for murder.  However, the General Assembly indicated in R.C. 2903.02(A) and (B) that human lives and human pregnancies are each entitled to statutory protection and that double punishment is warranted for ending both a human life and simultaneous terminating a pregnancy with the same conduct.  Accordingly, I conclude that the trial court properly convicted and sentenced Crisp on both Counts One and Two.

{¶56}  Likewise, in deciding whether to merge the counts for gross abuse of corpse and tampering with evidence, I would apply *Brown* and conclude merger does not apply.  Tampering with evidence is designed to protect the state's effort to conduct criminal investigations.  Just as clearly, the prohibition against gross abuse of a corpse is designed to protect the sanctity of the deceased's last remains.  The two interests are clearly separate, each deserving separate protection.  In light of the legislature's clear intent to protect them, I also conclude the legislature intended separate punishment for each even when they result from the same conduct.  Thus, I dissent from the majority's decision to merge these two counts.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Kline, J.: Concurs in Judgment and Opinion with Opinion.
McFarland, J.: Concurs in Judgment Only.
Harsha, J.: Concurs in part and Dissents in part with Opinion.

For the Court

BY: _____
Roger L. Kline, Judge

BY: _____
Matthew W. McFarland, Judge

BY: _____
William H. Harsha, Judge

## NOTICE TO COUNSEL
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**