[Cite as *State v. Ruff*, 2013-Ohio-3234.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-120533 |
| | | C-120534 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1000868 |
| | | B-0907091 |
| vs. | : | |
| KENNETH RUFF, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Sentences Vacated in Part, and
　　　　　　　　　　Cause Remanded

Date of Judgment Entry on Appeal:  July 26, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela Stagnaro*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    Kenneth Ruff was convicted of the rape and aggravated burglary of three women, of the attempted rape of a fourth women, and of the sexual battery of a minor. He raises a number of arguments on appeal, most of which we do not find to be meritorious. We do not believe that the verdicts were against the weight or sufficiency of the evidence; nor do we believe that the trial court erred by refusing to require separate trials for each victim, by allowing the admission of a statement made to a nurse by one of the victims who died before trial, or by refusing to allow prior inconsistent statements to be proven by extrinsic evidence. We do agree with Mr. Ruff, however, that the trial court should have merged the convictions for aggravated burglary with the rape convictions because the state relied upon the same conduct to prove both offenses.

### Background

{¶2}    Mr. Ruff was convicted of the sexual battery of K.P. In 2002, K.P. was a 14-year old, who had run away from home and was walking with a friend in the Carthage neighborhood of Cincinnati. The two girls accepted a ride from a male acquaintance, and picked up Mr. Ruff somewhere along the way. The men bought the girls a bottle of liquor, and K.P. became so drunk that she urinated and vomited on herself in the backseat of the car. The group eventually ended up at an apartment, where someone removed K.P.'s soiled pants and left her lying on a mattress in the bedroom. K.P. testified that she awoke to find Mr. Ruff holding her down by the throat and telling her that he was raping her.

{¶3}    Next for Mr. Ruff was the attempted rape of K.H. In July 2008, Mr. Ruff stopped by K.H.'s apartment to visit K.H.'s sister. When the sister left, Mr. Ruff came in to talk to K.H., who was watching television in her bedroom. After engaging in small talk for a while, K.H. asked Mr. Ruff if he could massage her back. Mr. Ruff

2

took the massage as an opportunity to attempt to force himself upon K.H. K.H. fought back, however, and ultimately Mr. Ruff fled the apartment after ejaculating on her leg.

{¶4} Mr. Ruff was convicted of the aggravated burglary and rape of three different women in the Westwood neighborhood in incidents that spanned a nine-month period in 2009. The first victim, K.B., was suffering from mental illness and living in a group home with two other women. On the night in question, she took sleep medication, which made her kind of "foggy." She awoke in the middle of the night to find Mr. Ruff raping her. When K.B. started crying and screaming for help, Mr. Ruff told her "to shut up or I will kill you." When K.B. continued screaming, Mr. Ruff took off running out the door.

{¶5} Mr. Ruff's next victim, S.W., suffered from a variety of health issues: her toes had been amputated as a result of diabetes, causing her to move around with the assistance of a walker and wheelchair; high blood pressure and other ailments necessitated an oxygen tube and CPAP machine at night; and she wore protective underwear for incontinence issues. S.W. was home alone when Mr. Ruff knocked on her door, looking for S.W.'s estranged husband. S.W. explained that her husband did not live there anymore, and Mr. Ruff left. Later that night, S.W. awoke to find Mr. Ruff in her bedroom. She tried to pull a bed sheet over herself, but Mr. Ruff pushed her down, tore off her protective underwear and raped her. When S.W. attempted to resist, he choked her and said, "If you don't stop fighting, I'm going to hurt you." When he had finished raping S.W., Mr. Ruff put his clothes back on and walked out as if nothing had happened. He told S.W. that he was sorry and that he "didn't mean to do it."

{¶6}     Mr. Ruff's final victim, P.F., was 75 years old.  Mr. Ruff broke into her home through a first floor window, found P.F. in her living room and demanded money.  When P.F. said she didn't have any, Mr. Ruff raped her.   P.F. tried to scream for help but Mr. Ruff put his arm across her neck, choking her, and warned "I killed once already."  He beat her on the head with his cell phone to keep her still.  After Mr. Ruff raped P.F., he demanded a cigarette and a can of Diet Pepsi before he left.

{¶7}     Detective Deron Hall investigated the rape of P.F.  A DNA test in P.F.'s case was matched to DNA in the K.P. and K.B. cases.  Detective Hall learned further that K.B. had referred to her rapist as "Kenny-Ken."  Armed with this information, the detective began canvassing Westwood using the first name Kenny and the physical description P.F. had given of her rapist.   Detective Hall developed Mr. Ruff as a suspect, and asked him to consent to a DNA test.  When Mr. Ruff's DNA sample matched the evidence that police had obtained in their investigation of the sexual assaults of P.F., K.B., and K.P., Detective Hall arrested Mr. Ruff.

{¶8}     Mr. Ruff testified at trial and provided the jury with a different version of events.  He claimed that he had consensual sex with four of the women and that each had a reason to falsely report a rape.  With respect to the other victim, 75-year-old P.F., Mr. Ruff testified that he had tried to rob her of money on the night of the rape and that the DNA in her underwear must have somehow come from that encounter.  He also presented testimony from Detective Stephanie Fassnacht, who had investigated K.P.'s sexual assault.   Detective Fassnacht testified that K.P. and her friend had initially told her that they had been abducted at knife point and at gunpoint, but during her investigation she discovered that that they had voluntarily accepted a ride with some adult men.

4

{¶9}     The crimes involving the five women were charged in two separate indictments.  The trial court denied Mr. Ruff's motion to sever the charges relating to each victim, and all the charges were tried together.  A jury found Mr. Ruff guilty on all counts, and the trial court sentenced Mr. Ruff to an aggregate term of 40 years in prison.

## Joinder of the Offenses

{¶10}     In his first assignment of error, Mr. Ruff argues that the trial court committed reversible error by refusing to sever the counts relating to each victim. He contends that the jury could not have evaluated the evidence relating to each of the crimes separately, and that he was prejudiced as a result of the joinder of the charges against him.

{¶11}     The law favors the joinder of multiple offenses in a single trial.  *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981); *see* Crim.R. 8; Crim.R. 13.  Nevertheless, a trial court may grant severance under Crim.R. 14 if a defendant demonstrates that he will be prejudiced by the joinder.  *State v. Roberts*, 62 Ohio St.2d 170, 175, 405 N.E.2d 247 (1980).  The state can negate claims of prejudice by showing either "(1) that the evidence for each count will be admissible in a trial of the other counts under Evid.R. 404(B), or (2) that the evidence for each count is sufficiently separate and distinct so as not to lead the jury into treating it as evidence of another." *State v. Bennie*, 1st Dist. Hamilton No. C-020497, 2004-Ohio-1264, ¶ 20.

{¶12}     We find no prejudice from the trial court's refusal to sever the charges relating to each victim. The offenses in each indictment involved five different victims and were analytically and logically separate. The state's presentation of the evidence with respect to each of the charges was direct and

uncomplicated, thus enabling the jury to segregate the proof for each offense. The trial court, furthermore, instructed the jury to consider each count separately. Because the trial court's refusal to sever the counts did not prejudice Mr. Ruff, we overrule his first assignment of error.

### Hearsay and Confrontation Clause Issues

{¶13} Mr. Ruff next argues the trial court erred as a matter of law by allowing hearsay to be admitted into evidence, which violated his rights under the Confrontation and Due Process Clauses of the United States and Ohio Constitutions. Specifically, Mr. Ruff argues that it was improper to allow Delores Holtmann, a Sexual Abuse Nurse Examiner ("SANE") who examined P.F. after the rape, to read a statement that P.F. had made to her at the hospital. P.F. had died prior to trial and was thus unavailable to testify.

{¶14} P.F. was interviewed by Detective Hall the night of her rape. Detective Hall testified that he noticed visible bruising and had her transported to the hospital for treatment. Nurse Holtmann interviewed P.F. at the hospital. The primary purpose of the interview, according to Nurse Holtmann, was for medical treatment and diagnosis. P.F. recounted that she had been sitting on the couch when her assailant came in and demanded money from her. She then described in detail her rape and other physical abuse that Mr. Ruff inflicted in the process, including choking her and hitting her with a cell phone. After he finished raping her, she explained further, he demanded a cigarette, took a can of Diet Pepsi, and walked out the door.

{¶15} Mr. Ruff objects to Nurse Holtmann's verbatim recitation of P.F.'s statement claiming that his constitutional right to confront the witnesses against him was violated because P.F. did not testify at trial and he did not have a prior opportunity to cross-examine her. The United States Supreme Court has held that out-of-court

statements that are testimonial in nature are barred by the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness, regardless of whether the statements are deemed reliable by the trial court. *Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Therefore, we must determine whether P.F.'s statements in the medical records were testimonial. *State v. Jones,* 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 143.

{¶16} The Ohio Supreme Court has held that statements made by an adult victim of sexual assault to a nurse working in a specialized medical facility for sexual-assault victims were nontestimonial. *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 2 and 47. "A testimonial statement," explained the court, "includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.' " *Id.* at paragraph one of the syllabus, quoting *Crawford* at 52. "In determining whether a statement is testimonial for Confrontation Clause purposes, courts should focus on the expectation of the declarant at the time of making the statement; the intent of a questioner is relevant only if it could affect a reasonable declarant's expectations." *Id.* at paragraph two of the syllabus. The court noted that even though the specialized facility partly served a prosecutorial function, its "primary" function was the care of patients. *Id.* at ¶ 39. Thus because the "victim could reasonably have believed that * * * [her] statement would be used primarily for health-care purposes," the statement was nontestimonial. *Id.* at ¶ 39-40.

{¶17} A year later, the Ohio Supreme Court held that where hearsay statements by a child declarant to a police officer were at issue, the appropriate standard to determine if such statements were testimonial was not the objective-

7

witness test set forth in *Stahl*, but a test under which the court determines the "primary purpose" of such statements. *State v. Siler*, 116 Ohio St.3d 39, 2007-Ohio-5637, 876 N.E.2d 534, paragraph one of the syllabus.

{¶18}   In *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, 933 N.E.2d 775, the court applied this "primary purpose" test to statements made to a social worker at a child-advocacy center. Because child-advocacy centers have a "dual purpose" of gathering forensic information and gathering medical information for diagnosis and treatment, the court held that the trial court was required to examine each statement and determine if it was testimonial or nontestimonial. *Id.* at ¶ 34-41. Statements made primarily for a forensic or investigative purpose are testimonial and thus inadmissible under the confrontation clause where the declarant is unavailable; but statements made for diagnosis and treatment are nontestimonial and thus admissible without offending the confrontation clause. *Id.* at paragraphs one and two of the syllabus. The court found that statements about sexual acts performed by the perpetrator and other physical details about the abuse inflicted on the victim were necessary for the proper medical diagnosis and treatment of the victim in that case and, therefore, were nontestimonial. *Id.* at ¶ 37.

{¶19}   It is not clear that the Ohio Supreme Court would apply *Arnold* beyond the context of a child victim and a child-advocacy center. In reaching its decision, the court noted the "unique" nature of such centers with their dual forensic and medical purpose. *Id.* at ¶ 33. Further, there is nothing in *Arnold* which disavows the court's holding in *Stahl*. Nevertheless, even if we were to apply *Arnold* beyond the context of a child-advocacy center, we still find no merit to the assignment of error.

{¶20}    In this case, the vast majority of P.F.'s statements dealt with the abuse Mr. Ruff inflicted upon her.  Such statements were made for the purpose of medical diagnosis and treatment and would have been understood to be so by an objective observer.   Under either the "objective observer" or "primary purpose" test such statements were nontestimonial and properly admitted into evidence.  Arguably, if we parse her statements in the manner suggested by the *Arnold* decision, some of the peripheral details provided by P.F.—that Mr. Ruff demanded money before raping her and had a cigarette and Diet Pepsi afterwards—were testimonial.  Any error in admitting such statements was harmless, however, because of the other evidence of Mr. Ruff's guilt and the fact that Mr. Ruff himself testified to some of those facts at trial.  *See State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 43-50.

{¶21}    Similarly, P.F.'s statements do not constitute inadmissible hearsay. Evid.R. 803(4) provides that hearsay statements are admissible if they are "made for purposes of medical diagnosis or treatment and describ[e] medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." *See State v. Muttart*, 116 Ohio St.3d 5, 2007-Ohio-5267, 875 N.E.2d 944, syllabus. Here, the purpose of P.F.'s statements was for medical diagnosis and treatment, and even if we were to conclude that a few of the details extend beyond what P.F. needed to say for purposes of obtaining treatment, any error in the admission of such statements was harmless for the reasons explained above.  We, therefore, overrule the second assignment of error.

### K.P.'s Prior Inconsistent Statement

{¶22}    Mr. Ruff argues the trial court erred by preventing him from impeaching K.P. by admitting extrinsic evidence of a prior inconsistent statement.  Defense counsel

argued that a prior statement that K.P. made to police officers was inconsistent with her trial testimony in three respects: (1) she testified at trial that she had never had sex before the incident but told the police officers that she had engaged in previous sexual activity; (2) she testified at trial that she awoke to find Mr. Ruff with his hands on her throat but did not say anything about being choked to the police officers; and (3) she told the police initially that she had been abducted, but admitted at trial that she had voluntarily gotten into the car. The trial court permitted defense counsel to question K.P. about those matters at length, but denied counsel's request to "publish" K.P.'s prior statement to the jury.

{¶23}  We believe the trial court acted well within its discretion. Evid.R. 613(B) provides:

Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), 616(B) or 706;

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the rules of evidence.

Thus under the rule, collateral matters may not be proven by extrinsic evidence.

{¶24} Here K.P. admitted on cross-examination that she had initially lied to the police officers about being abducted. As a consequence, her prior testimony on this point was not inconsistent with her trial testimony and there was no need for the admission of extrinsic evidence. *See State v. Young*, 2d Dist. Montgomery No. 23438, 2010-Ohio-5157, ¶ 129. The other matters upon which defense counsel sought to admit extrinsic evidence—whether she had told police initially that Mr. Ruff put his hands on her throat and what she had said about her sexual history—were collateral to issues of the defendant's guilt. Mr. Ruff was charged with unlawful sex with a minor and sexual battery.[1] Defense counsel had admitted in his opening statement that Mr. Ruff had had sex with K.P., a minor. The sexual-battery charge required only a showing that "[t]he offender knows the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." R.C. 2907.03(A)(2). The only issue relating to the sexual-battery charge was whether Ruff knew that K.P. was substantially impaired. Issues about whether she had had sex previously or if Mr. Ruff had put his hands on her throat were clearly collateral to the issue of her impairment. Because the "subject matter" of the statements at issue was "not of consequence to the determination of the action other than the credibility of a witness," extrinsic evidence was properly excluded by the trial court. We, therefore, overrule the third assignment of error.

### Sufficiency and Weight-of-the-Evidence Claims

{¶25} In his fourth assignment of error, Mr. Ruff challenges the weight and sufficiency of the evidence adduced at trial to support his convictions.

---

[1] The unlawful-sex-with-a-minor offense was merged into the sexual-battery conviction at sentencing.

{¶26}   As to the sufficiency argument, our review of the record reveals that the state adduced substantial, credible evidence from which the jury could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of the offenses for which Mr. Ruff was found guilty.  *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶27}   In regard to the manifest-weight argument, Mr. Ruff's primary argument is that the state's witnesses were not credible.  Matters as to the credibility of witnesses, however, were for the jury to determine. *See State v. Waddy*, 63 Ohio St.3d 424, 430, 588 N.E.2d 819 (1992); *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967).  Our review of the entire record fails to persuade us that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Ruff's convictions and order a new trial.  *See State v. Thompkins*, 78 Ohio St.3d 380, 386-87, 678 N.E.2d 541 (1997).  We, therefore, overrule this assignment of error.

## Sentencing Errors

{¶28}   Mr. Ruff asserts various sentencing errors in his fifth assignment of error.  He argues that the trial court erred by failing to find that his convictions for aggravated burglary and rape with respect to P.F., K.B., and S.W. are allied offenses pursuant to R.C. 2941.25; that the trial court erred in imposing consecutive sentences without making the necessary findings; and that the trial court abused its discretion in imposing a 40-year prison sentence.

{¶29}   Because Mr. Ruff's allied-offense argument is dispositive of his fifth assignment of error, we address it first.  Mr. Ruff was found guilty of three counts of rape under R.C. 2907.02(A)(2), which provides that: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit

12

by force or threat of force."    He was also convicted of three counts of aggravated burglary.  The aggravated burglary statute, R.C. 2911.11, provides:

> (A) No person, by force, stealth or deception shall trespass into an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
>
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
> (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

Mr. Ruff was convicted under the first subsection, R.C. 2911.11(A)(1).  The argument that is advanced is that the physical harm that is at issue in the aggravated burglary is the rape (sexual conduct compelled by force or threat of force), and that, therefore, the offenses are allied.

{¶30}   A few years ago—that is, prior to the Ohio Supreme Court's decision in *State v. Johnson*,  128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061—the question presented here would have been a fairly easy one.  It was widely understood that aggravated burglary under R.C. 2911.11(A)(1) is not allied with an offense of violence that occurs after the defendant has entered the premises.  *See*, *e.g.*, *State v. Frazier*, 73 Ohio St.3d 323, 343, 652 N.E.2d 1000 (1995) (aggravated murder and aggravated burglary not allied); *Waddy*, 63 Ohio St.3d 424, 448, 588 N.E.2d 819 (aggravated burglary and kidnapping not allied); *State v. Moss*, 10th Dist. Franklin No. 99AP-30, 1999 Ohio App. LEXIS 6497, *8 (Dec. 28, 1999) (aggravated burglary and rape not allied); *State v. Lamberson*, 12th Dist. Madison No. CA2000-04-012,

13

2001 Ohio App. LEXIS 1255, *47 (Mar. 19, 2001) (aggravated burglary and rape not allied).

{¶31}   *Johnson*, however, changes the analysis.  In the syllabus of that case, the Ohio Supreme Court held that "when determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered (*State v. Rance* [1999], 85 Ohio St.3d 632, 710 N.E.2d 699, overruled)."  All seven justices concurred in the syllabus overruling *Rance,* and they uniformly agreed that the conduct of the accused must be considered.  *See Johnson* at ¶ 44, ¶ 68 (O'Connor, J., concurring), and ¶ 78 (O'Donnell, J., concurring).    This court has understood *Johnson* to mean that if the evidence adduced at trial reveals that the state relied upon the same conduct to support the two offenses, and that the offenses had been committed neither separately nor with a separate animus as to each, then the defendant is afforded the protection of R.C. 2941.25, and the trial court errs in imposing separate sentences for the offenses. *See State v. Hodges*, 1st Dist. Hamilton No. C-110630, 2013-Ohio-1195, ¶ 6; *State v. Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, ¶ 20 (1st Dist.).

{¶32}   Subsequent to *Johnson*, courts have concluded that aggravated burglary under R.C. 2911.11(A)(1) merges with another felony where the physical-harm element in subpart (A)(1) consists of the  same  conduct necessary to prove an element of the other felony.   Thus, in *State v. Shears*, 1st Dist. Hamilton No. C-120212, 2013-Ohio-1196, ¶ 39-43, we held that an aggravated-burglary charge would merge with an aggravated-robbery charge because the same physical harm provided the "aggravation" necessary for both counts.  The Twelfth District has reached a similar result, concluding that aggravated burglary under R.C. 2911.11(A)(1) merges with kidnapping where the conduct involved in the kidnapping was the same conduct used to meet the physical-

harm requirement in the aggravated-burglary statute. *State v. Ozevin*, 12th Dist. Clermont No. CA2012-06-044, 2013-Ohio-1386. "[T]he act of aggravated burglary in violation of 2911.11(A)(1)," the court explained, "is not complete until the offender inflicts, attempts, or threatens physical harm to another." *Id.* at ¶ 13. Similarly, the Eleventh District held that aggravated burglary and aggravated robbery merge where the physical harm at issue is the same physical harm necessary to meet the physical-harm requirement of the aggravated-robbery statute, R.C. 2911.01(A)(3). *State v. Jarvi*, 11th Dist. Ashtabula No. 2011-A-0063, 2012-Ohio-5590, ¶ 24. Likewise, the Fourth District held that aggravated burglary and felonious assault merge where the felonious assault constitutes the physical harm in the aggravated burglary. *State v. Jacobs*, 4th Dist. Highland No. 11CA26, 2013-Ohio-1502, ¶ 49-51.

{¶33} In the present case, each aggravated burglary was not completed until Mr. Ruff raped his victims, and the state necessarily relied upon evidence of the rapes to establish the elements of the aggravated-burglary offenses. The conduct relied upon to establish rape—sex compelled by force—was the same as the conduct relied upon by the state to establish the "physical harm" component in R.C. 2911.11(A)(1). Thus, we are constrained to reverse the convictions.

{¶34} The dissent protests that Mr. Ruff's conduct is best understood as two offenses—breaking into the victims' homes and raping them—and says that he should be separately punishable for both. But of course he is separately punishable for both. He could have been convicted of simple burglary under R.C. 2911.12—which does not require physical harm—and the burglary conviction would not have merged with the rape. *See Shears*, 2013-Ohio-1196, at ¶ 42, 45. The problem in this case, though, is that he was charged with R.C. 2911.11(A)(1) aggravated burglary, which has the additional element of the infliction of physical harm.

15

{¶35} We also note that the merger might not be required had Mr. Ruff been charged with aggravated burglary of the deadly weapon variety under R.C. 2911.11(A)(2). A defendant may be convicted under R.C. 2911.11(A)(2) without evidence of physical harm and thus such an offense does not necessarily merge with a rape conviction. *See State v. Adams*, 1st Dist. Hamilton No. C-120059, 2013-Ohio-926, ¶ 24-28.

{¶36} In this case, however, the physical harm that constituted the "aggravating" factor in each aggravated burglary was the rape. As a consequence, we must, under *State v. Johnson,* reverse Mr. Ruff's separate convictions for the aggravated burglary and rape of P.F., K.B., and S.W. Our decision today is not—as the dissent suggests—an attempt to compensate for some sort of past jurisprudential sins. We simply apply the law. And unless and until the Supreme Court sees fit to reconsider its holding in *Johnson*, we will not shirk our duty to adhere to its holding.

{¶37} We sustain that part of Mr. Ruff's fifth assignment of error challenging the multiple sentences for these offenses. His remaining arguments, which challenge the trial court's imposition of consecutive sentences and the aggregate term of his incarceration, are moot. *See* App.R.12(A)(1)(c). Thus, we sustain in part, and find moot, in part, Mr. Ruff's fifth assignment of error.

{¶38} We, therefore, vacate the sentences for the aggravated-burglary and rape counts relating to P.F., K.B., and S.W., and remand this cause so that the state may elect which allied offense it will pursue for purposes of sentence and conviction. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus. We affirm the trial court's judgment in all other respects.

Judgment accordingly.

CUNNINGHAM, P.J., concurs.
DINKELACKER, J., concurs in part and dissents in part.

**DINKELACKER, J.,** concurring in part and dissenting in part.

{¶39} Because I believe that the aggravated-burglary and rape offenses are not allied offenses of similar import, I must dissent.

{¶40} In a previous decision, I have noted my growing concern with the development of post-*Johnson* jurisprudence in Ohio. *See State v. Anderson*, 1st Dist. Hamilton No. C-110029, 2012-Ohio-3347 (Dinkelacker, J., dissenting). The majority's analysis in this case continues the trend of overcompensating for the sins of the past. There is no interpretation of *Johnson* that requires a finding that "the state relied upon the same conduct to support the two offenses, and that the offenses had been committed neither separately nor with a separate animus as to each * * *."

{¶41} Consider the crime of aggravated burglary. It has been widely held that when an individual commits the crime of aggravated burglary and there are two individuals in the dwelling, the offender can be convicted of only one offense. *See, e.g., State v. Marriott*, 189 Ohio App.3d 98, 2010-Ohio-3115, 937 N.E.2d 614 (2d Dist.). This is because "R.C. 2911.11(A) is not meant to criminalize an offender's conduct toward the occupants of the structure; rather the prosecutor may charge the defendant with an assault offense to satisfy that interest." *Id.* at ¶ 46. As the Second Appellate District noted, "the inclusion of the element that the offender 'inflicts, or attempts or threatens to inflict physical harm on another' * * * does not convert the aggravated burglary statute to a statute that is defined in terms of conduct toward another." *Id.* at ¶ 38.

{¶42} Under R.C. 2941.25, a trial court may, in a single proceeding, sentence a defendant for two or more offenses "having as their genesis the same criminal conduct or transaction," if the offenses (1) are not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate

animus as to each offense. *See State v. Bickerstaff*, 10 Ohio St.3d 62, 65-66, 461 N.E.2d 892 (1984), quoting *State v. Moss*, 69 Ohio St.2d 515, 519, 433 N.E.2d 181 (1982). "The Ohio Supreme Court interprets the term 'animus' to mean 'purpose or, more properly, immediate motive,' and infers animus from surrounding circumstances." *State v. Shields*, 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 16, citing *State v. Logan*, 60 Ohio St.2d 126, 131, 397 N.E.2d 1345 (1979). The nucleus of the aggravated-burglary conduct, and Ruff's immediate motive, was to trespass. To hold otherwise would all but vitiate the crime of aggravated burglary, as it cannot be committed without concurrently intending to commit some further criminal offense once entry has been achieved.

{¶43} Perhaps the best illustration of the separation of these two offenses is the separate harms they caused the victims. The women in this case no longer feel safe in their homes, and have been physically violated in the most intimate, personal way possible. To characterize what occurred to them as merely the "physical harm" of an aggravated burglary is unthinkable. This court has noted that when the conduct so exceeds the degree required to commit one offense, a separate animus can be demonstrated as to a second offense. *State v. Whipple*, 1st Dist. Hamilton No. C-110184, 2012-Ohio-2938, ¶ 39. The harm suffered by these women so exceeds the level of harm required to support an aggravated-burglary conviction that to hold that they are *not* grossly disproportionate is simply disingenuous.

{¶44} When addressing aggravated burglary, the Eighth Appellate District warned that allowing multiple convictions when there are multiple persons present was contrary to the history of the offense. In so warning, it also presaged the outcome of this case:

18

It would transform burglary from an offense against the sanctity of the dwelling house into an offense against the person. Logically, one of the unintended consequences of such a transformation may be that the act of burglary, which is completed as soon as the dwelling is entered with the requisite intent, will be viewed as an allied offense to the crimes the defendant commits therein.

*State v. Adkins*, 8th Dist. Cuyahoga No. 95279, 2011-Ohio-5149, ¶ 41.

{¶**45**} If the average person were asked what Ruff did, he or she would respond that Ruff broke into the victims' homes and raped them—two offenses. He or she would easily and logically understand that Ruff could properly be punished for both of them. Ruff violated both the "sanctity of the dwelling house" and the persons of these women. They were two offenses for which he can and should be separately punished.

{¶**46**} I must note that this court's opinion, which I authored, in *State v. Shears*, 1st Dist. Hamilton No. C-120212, 2013-Ohio-1196, cited by the majority, involved a determination that the crimes of aggravated burglary and aggravated robbery must be merged. The opinion concluded that

[t]he problem with these two separate convictions is that the conduct that provides the aggravation for both counts is the same: the physical harm that Shears caused to Mr. Batawana in order to rob him. Since this was the same conduct that was committed with the same animus, the two counts must merge.

*Id.* at ¶ 41.

**{¶47}** *Shears* is distinguishable from this case. Aggravated burglary and aggravated robbery use identical language to provide for the aggravation aspect of the respective statutes. *Compare* R.C.2911.11 and 2911.01. In the *Shears* case, merger was required as the statutory language covered the same conduct: "the physical harm that Shears caused Mr. Batawana in order to rob him."

**{¶48}** Such is not the situation in this case. Rape, as defined under R.C. 2907.02 (a completely different part of the code dealing with sexual crimes), is a crime that prohibits one from engaging in sexual conduct by force (as in this case). Nowhere in the rape statute is there an element of the offense that requires the type of conduct that serves as the "aggravation" for the burglary statute.

**{¶49}** In this case, Ruff separately committed aggravated burglary and rape in each instance. For these reasons, I would hold that Ruff's rape and aggravated-burglary convictions were not subject to merger. In all other aspects, I concur with the opinion of the majority.

Please note:
The court has recorded its own entry this date.