[Cite as *State v. Ruff*, 2015-Ohio-3367.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-120533 |
| | | C-120534 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-0907091 |
| | | B-1000868 |
| vs. | : | |
| | | *O P I N I O N.* |
| KENNETH RUFF, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Sentences Vacated in Part, and Cause Remanded.

Date of Judgment Entry on Appeal: August 21, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curren*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*The Farrish Law Firm* and *Michaela M. Stagnaro*, for Defendant-Appellant.

**DEWINE, Judge.**

{¶1}    Kenneth Ruff broke into the homes of three women and raped them.  For this, he was convicted of three counts of aggravated burglary and three counts of rape.   On appeal, we found that the aggravated-burglary and rape offenses were allied offenses for which Ruff could not be separately convicted, so we vacated those sentences and remanded the cause to the trial court.  The Ohio Supreme Court, however, determined that in applying the merger statute, we had failed to consider whether the offenses were of similar import.  It remanded the case so that we could consider the similar-import question.

{¶2}    Having reviewed the record, we conclude that the offenses were offenses of similar import.  Thus, we vacate the sentences for the aggravated burglaries and rapes and remand the case to the trial court.  In all other respects, the judgment of the court is affirmed.

## I. The Issue Before Us

{¶3}    The facts were set forth in our prior opinion and there is no need to repeat them in detail here.  *See State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234 ("*Ruff I*").  Important for our purposes is that Ruff's aggravated-burglary convictions came under R.C. 2911.11(A)(1).  That subsection requires that in addition to breaking into an occupied structure with the intent to commit a criminal offense, "the offender inflict[] or attempt to inflict physical harm on another."  It is this physical-harm element that elevates the offense to aggravated burglary.  Absent the physical-harm element—or a

2

violation of (A)(2) involving a firearm or dangerous ordnance—the offense would be simple burglary.

{¶4}   In the trial court, the state relied solely on the rapes to meet the physical-harm requirement of the statute.  Thus, this case requires us to apply Ohio's merger statute, R.C. 2941.25, in a situation where the conduct constituting one offense also serves as the aggravating element of another offense.

## II. Our Prior Decision

{¶5}   In *Ruff I*, we applied the Supreme Court's decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.   The *Johnson* case represented a marked break in the manner in which the Supreme Court had determined whether offenses were of a "similar import."  Prior to *Johnson*, the inquiry had focused on an analysis of the statutory elements—an inquiry quite similar to the one engaged in by federal courts under the *Blockburger* test.  *See State v. Ruff*, ___ Ohio St.3d ___, 2015-Ohio-995, ___ N.E.3d ___ (French, J., dissenting).  But in *Johnson*, the court required that we examine the defendant's conduct.  *Johnson* at syllabus.

{¶6}   We explained in *Ruff I* that pre-*Johnson*, it was widely understood that aggravated burglary was not allied with an offense of violence that occurs after the defendant has entered the premises.  *Ruff I* at ¶ 30.  We observed, however, that *Johnson* had changed the analysis:

> [t]his court has understood *Johnson* to mean that if the evidence
> adduced at trial reveals that the state relied upon the same
> conduct to support the two offenses, and that the offenses had
> been committed neither separately nor with a separate animus as
> to each, then the defendant is afforded the protection of R.C.

3

2941.25, and the trial court errs in imposing separate sentences

for the offenses.

*Id.* at ¶ 31. Based on this understanding of *Johnson*, we concluded that the trial court should have merged the offenses because the conduct relied upon by the state to establish rape was the same conduct it relied upon to establish the "physical harm" component of aggravated burglary. We thus vacated the sentences for the aggravated-burglary and rape counts and remanded the case so that the state could elect which offenses it wanted to pursue for sentence and conviction. *Id.* ¶ 33.

### III. The Supreme Court Decision

{¶7} The Supreme Court reversed our decision, concluding that in determining whether the aggravated-burglary and rape counts as to each victim should have been merged, we had neglected to consider whether the import of the offenses was similar. *Ruff*, ___ Ohio St.3d ___, 2015-Ohio-995, ___ N.E.3d ___, at ¶ 29.

{¶8} The court took the opportunity to clarify its ruling in *Johnson*. In *Johnson*, it had held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at syllabus. In *Ruff*, it explained that that analysis was incomplete because it did not address the question of whether the offenses were of dissimilar import. *Ruff*, ___ Ohio St.3d ___, 2015-Ohio-995, ___ N.E.3d ___, at ¶ 16. *See* R.C. 2941.25(B). Thus, the court held that

[u]nder R.C. 2941.25(B), a defendant whose conduct supports

multiple offenses may be convicted of all the offenses if any one of

4

the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at paragraph three of the syllabus. Based on its determination that our analysis of Ruff's offenses had not taken into account the import of the offenses, it remanded the case.

### IV. Are the Offenses of Similar Import?

{¶9} The sole issue on remand, then, is whether the offenses of aggravated-burglary and rape were of similar or dissimilar import. If they were of dissimilar import, Mr. Ruff could be separately convicted of each offense. Conversely, if the offenses are of similar import, our earlier conclusion stands, and the court must merge the offenses.

### A. The Supreme Court on Import

{¶10} While not deciding whether the offenses in this case were of similar import, the Ohio Supreme Court in *Ruff* did provide some guidance on how to make the determination.

{¶11} The state had urged the court to hold that aggravated burglary and rape must always have dissimilar import. But the court declined to announce "a bright-line rule" to "govern every situation":

> Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result because an offense may be

5

committed in a variety of ways and the offenses committed may

have different import.

*Ruff*, ___ Ohio St.3d ___, 2015-Ohio-995, ___ N.E.3d ___, at ¶ 30.

{¶12} Looking to its past decisions to pin down a definition of import, the court explained that offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. Here, the aggravated-burglary/rape offenses had one victim each, so we consider whether the harm that resulted from each offense was separate and identifiable.

### B. Separate and Identifiable Harms?

{¶13} We turn now to the harms that resulted from the offenses in the case. The aggravated-burglary offenses at issue here are somewhat unusual in that they involve two distinct harms: the intrusion into the sanctity of the home <u>and</u> the subsequent physical harm (here, the rapes). One harm—the intrusion in the dwelling—is separate and identifiable from the harm caused by the rape offenses here, but the other harm—the physical harm—is not separate and identifiable.

{¶14} Unfortunately, the court in *Ruff* did not explicitly say what we should do in a situation such as this one where one offense involves multiple harms, and one offense constitutes an aggravating element of the other. Fortunately, though, it did drop a few breadcrumbs.

{¶15} The most obvious clue is the court's rejection of a "categorical rule" that aggravated burglary and rape are of dissimilar import. The state argued in the Supreme Court—as it does here—that rape and aggravated burglary are of dissimilar import because rape is a sexually oriented offense while burglary

is about trespass into structures.[1] Under this logic, aggravated burglary would always have a dissimilar import from rape or any other act of violence constituting the "aggravating factor," because aggravated burglary always involves a separately identifiable harm in the intrusion into a dwelling. The court in *Ruff*, however, specifically rejected this analysis: it "decline[d] to create an absolute rule based upon the definition of the offenses." *Ruff*, ___ Ohio St.3d ___, 2015-Ohio-995, ___N.E.3d ___, at ¶ 26.

{¶16} If there only needed to be one harm that was separate and identifiable, then rape and aggravated burglary could never merge because aggravated burglary will always involve the "separate and identifiable" harm caused by the intrusion into the dwelling. The same would be true of assault or any other crime constituting the aggravating element of physical harm for aggravated burglary. Thus, implicit in its rejection of a categorical rule and remand to this court is the idea that the offenses are of similar import when the harm caused by one crime is the same harm that is the aggravating circumstance of another crime.

{¶17} The court suggested as much in its discussion of similar import. It explained that offenses are "not allied offenses of similar import if neither is incident to the other." *Id.* at ¶ 23. It supported this proposition by citing to *State v. Moss*, 69 Ohio St.2d 515, 433 N.E.2d 181 (1982), a case the court summarized with this parenthetical: "aggravated burglary was not an allied offense of aggravated murder, because it was not incident to and an element of aggravated

---

[1] The state also repeats arguments it raised in *Ruff I* about Ruff's animus and whether the offenses were separately committed. The issue appealed to the Supreme Court and remanded to us, however, was limited to the import of the offenses. We therefore do not address the other issues now raised by the state.

murder." *Ruff* at ¶ 23. In this case, the conduct constituting the rape was an element of the aggravated burglary. The rape was "incident to and an element of" aggravated burglary in that but for the conduct constituting the rape, the offense of aggravated burglary would not have established. Only simple burglary could have been found.

{¶18} Thus, we conclude that the most reasonable reading of the Supreme Court's decision in *Ruff* is that where the conduct that constitutes one offense causes a harm that is not separate and identifiable from the harm caused by the aggravating element of another offense, then the offenses are of a similar import.

{¶19} The element of physical harm for each aggravated burglary was established by Ruff's rape of the victim. The harm that resulted from the rape of each victim was same harm that resulted when each burglary escalated to aggravated burglary. Thus, the harms were not "separate and identifiable."

{¶20} Perhaps anticipating our conclusion, the state argues that for each aggravated burglary, Ruff caused or threatened injury to the victims beyond the rapes. The Ohio Supreme Court faced a similar argument in *Johnson*, when it considered whether a sequence of blows to a victim could be seen to support multiple convictions. The court declined the opportunity to "parse [the defendant's] conduct into a blow-by-blow" and concluded that the sequence of blows was one discrete act. *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 56.

{¶21} Here, there was testimony that Ruff had threatened, choked and hit his victims. But the state used evidence of those acts to establish the force element for each rape. It relied solely on the rape offenses—and not other

actions done by Ruff—to establish the injury element of the aggravated burglaries. During the hearing on the issue of merger, the state did not argue that other actions by Ruff established the physical-harm element. And it did not dispute defense counsel's assertion that the physical harm for the aggravated burglary was the rape. Rather, the state argued the offenses were committed separately because the "[b]urglaries would have been committed and completed upon his entrance into the house."

{¶22} The state also has suggested that a decision to merge the aggravated-burglary and rape offenses under this fact pattern means that a defendant like Ruff cannot be punished for both the rape and the invasion of the home. But that is not true at all. There is no reason Ruff could not have been charged and convicted of both simple burglary and rape. In such a situation, the convictions would not have merged. *See Ruff I,* 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234, at ¶ 34. The problem only arises when a defendant is convicted of both rape and aggravated burglary and the rape is the aggravating element that transforms burglary to aggravated burglary.

### V. Conclusion

{¶23} Because the harm that resulted from each aggravated burglary was not separate and identifiable from the harm caused by each rape, we conclude that the offenses as to each victim were of similar import. And because the offenses were not committed separately or with separate animus, Mr. Ruff could not be convicted of both offenses for each victim. We therefore vacate the sentences for the aggravated-burglary and rape counts relating to P.F., K.B., and S.W., and remand the case to the trial court so that the state may elect which allied offense it will pursue for purposes of sentence and conviction. *See State v.*

*Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus. We affirm the judgment of the trial court in all other respects.

Judgment accordingly.

**CUNNINGHAM, P.J.,** concurs
**STAUTBERG, J.,** dissents.

**STAUTBERG, J.,** dissenting.

{¶24} I respectfully dissent because I do not believe that the rapes and aggravated burglaries in these cases are offenses of similar import subject to merger under R.C. 2941.25.

{¶25} I agree with the majority that the Ohio Supreme Court in *Ruff* rejected an "absolute rule based on the definition of the offense" in determining whether offenses should merge. *Ruff*, ___ Ohio St.3d ____, 2015-Ohio-995, ____ N.E.3d ____, at ¶ 28. A similar approach was set forth in *State v. Rance* 85 Ohio St.3d 632, 710 N.E.2d 699 (1999), and disposed of in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, syllabus. However, the court also rejected the bright-line rule argued by Ruff that "aggravated burglary, by requiring an element related to physical harm, must always merge with a violent offense such as rape." *Ruff* at ¶ 18.

{¶26} I believe that the Ohio Supreme Court provided plenty of guidance concerning the appropriate test for the "import" of offenses in its syllabus: "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus.

10

{¶27} The syllabus echoes now Chief Justice O'Conner's concurring opinion in *Johnson* that offenses "are of 'similar import' when the underlying conduct involves similar criminal wrongs and similar resulting harm." *Johnson* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 64.

{¶28} The *Ruff* court further explained, "even if Ruff committed the aggravated burglary and the corresponding rape of each victim *with the same conduct*, he could still be convicted of both offenses if the offenses are of dissimilar significance and have separate and identifiable harm." *Ruff* at ¶ 28. (Emphasis added.)

{¶29} Here, the "significance" of the two crimes is clearly different. At the core of an aggravated-burglary offense is burglary. At the end of the day, this is an offense against the security of an occupied structure. That the harm caused by a burglary offense is different from an offense against a person is made evident by the fact that a person can be convicted of only one count of burglary regardless of the number of occupants at the time of the offense. *See State v. Marriott*, 189 Ohio App.3d 98, 2010-Ohio-3115, 937 N.E.2d 614 (2d Dist.).

{¶30} In regard to aggravated burglary,

the purpose of R.C. 2911.11(A) is to elevate burglary to an aggravated offense when the defendant's conduct raises the risk of harm to persons by having a deadly weapon or by threatening or inflicting physical harm. The aggravated-burglary statute thus criminalizes and enhances the seriousness of the trespass under those circumstances. However, R.C. 2911.11(A) is not meant to criminalize an

11

offender's conduct toward the occupants of the structure; rather, the prosecutor may charge the defendant with an assault offense to satisfy that interest.

*Id.* at ¶ 46.

{¶31} Likewise, the Eighth Appellate District has observed that "burglary" is primarily defined in terms of the offender's conduct, rather than his conduct toward another person. *See State v. Lynott,* 8th Dist. Cuyahoga No. 89079, 2007-Ohio-5849, ¶ 28. "At common law, the offense was intended to punish the 'breaking of the close.' " *Id.*, citing *State v. Powers*, 8th Dist. Cuyahoga No. 86365, 2006-Ohio-2458, ¶ 12. The *Lynott* court further found that while the aggravated burglary statute "raises the degree of the criminal conduct if certain factors attend the offender's entry," it "does not contain an additional penalty for each person affected by the conduct." (Citations omitted.) *Lynott* at ¶ 29.

{¶32} Rape, by contrast, is a personal crime. It involves physical and potentially long-lasting mental harm. *See, e.g., State v. Smith*, 7th Dist. Mahoning No. 12 MA 168, 2014-Ohio-1398, ¶ 4; *State v. Fontenet*, 6th Dist. Lucas No. L-10-1366, 2013-Ohio-1355 ¶ 26-27; *State v. Presley*, 10th Dist. Franklin No. 02AP-1354, 2003-Ohio-6069, ¶ 85. Indeed, the sentencing scheme set forth in Title 29 of the Revised Code recognizes this distinction. In certain cases, rape carries a life sentence. R.C. 2907.02(B). A defendant convicted of aggravated burglary is subject to the general sentencing provisions of R.C. 2929.12 et seq.

{¶33} Understanding that an analysis cannot stop here because the facts of each case must be considered, I would hold that the facts of this case

establish that the victim of each rape suffered harm that is separate and identifiable from the harm resulting from each corresponding aggravated burglary.

{¶34} I see no impediment to parsing out Ruff's conduct to determine if his actions could have been the source of a separate and identifiable harm corresponding to each crime. Further, I find that the state's purported reliance on the rape of each victim to establish the "physical harm" element of each aggravated burglary to be immaterial. Our import-analysis must turn on an examination of the evidence adduced at trial and during the sentencing hearing, not on the state's argument concerning its theory of the case. *See Ruff* at ¶ 26. Further, even if Ruff committed the aggravated burglary and the corresponding rape of each victim with the same conduct, he could still be convicted of both offenses if the offenses are of dissimilar significance and have separate and identifiable harm. *Ruff* at ¶ 28.

{¶35} The Supreme Court went into greater detail concerning the facts in each aggravated burglary and rape than this court did in *Ruff I*:

> K.B. * * * was living in a group home so that her meals and medication could be monitored. She stated that on the night of the attack, she went to bed at 10:00 p.m. and took her medicine to help her sleep. The next thing she remembered was waking up in the middle of the night with a man raping her. K.B. testified that she started to cry and scream but the man told her, "Shut up or I will kill you."
>
> * * *

13

S.W. * * * was living in a basement apartment on the afternoon of May 27, 2009, when a man came over and asked for her ex-husband. She told the man that she was no longer with her ex-husband, and the man left. Later that night, a noise awakened her, and she saw somebody coming toward her. When she realized it was not her boyfriend, she told the person to leave and yelled for help. During the rape, S.W. grabbed her phone, but the assailant jerked it out of her hands, placed his thumb on her throat, and pushed down, saying, "If you don't stop fighting me, I'm gonna hurt you." Later, S.W. realized that the man who raped her was the same one who had come by earlier that day looking for her ex-husband. S.W. said that after that night she made sure all windows were locked and slept with all the lights on with a baseball bat and a pipe in her bed.

* * *

During opening statements, the state represented that the third woman, P.F., had died before trial. Details of the events of September 9, 2009, were testified to by a sexual-assault nurse examiner from the medical history that P.F. gave her during her examination. The examiner testified that she writes down word for word what a victim says. According to the statement, P.F. was sitting on her couch when a black man entered her apartment and demanded money. When she said that she did not have any, he pushed her down on the

14

couch and raped her. When P.F. yelled for help, the man put his arm across her neck and said, "I killed once already, and I won't hesitate to do it again." He also hit her on the head with his cell phone and choked her several times. The examiner stated that P.F. had an abrasion and swelling on the right side of her forehead and that there were petechiae in front of her right ear lobe, on the right side of her neck, and on her chest, which was consistent with being choked.

*Ruff* at ¶ 3-5.

{¶36} Only one of these three victims, K.B., was interviewed by the court clinic as part of the court-ordered presentence investigation ("PSI"). In her interview, K.B. stated that she had been to a hospital's psychiatric unit twice since the rape. Each time she had stayed for a two-week period.

{¶37} In the cases before us, Ruff's rape victims were penetrated, suffered bruising, were choked, were threatened with death, and also ingested prescribed prophylactic drugs to prevent any potential sexually-transmitted diseases. At least one of the victims suffered psychiatric harm from the rape requiring four weeks of hospitalization. I believe these harms are identifiable and separate from the harms of the aggravated burglaries, regardless of the fact that the same conduct was used as the aggravating factor for the burglary in each case.

{¶38} As Judge Dinkelacker succinctly stated in his dissent in *Ruff I*:

Perhaps the best illustration of the separation of these two offenses is the separate harms they caused the victims. The women in this case no longer feel safe in their homes, and

15

have been physically violated in the most intimate, personal way possible. To characterize what occurred to them as merely the "physical harm" of an aggravated burglary is unthinkable.

*Ruff I,* 1st Dist. Hamilton Nos. C-120533 and C-120534, 2013-Ohio-3234, ¶ 43 (Dinkelacker, J., dissenting).

{¶39} For these reasons, I would hold that Ruff's aggravated-burglary convictions and corresponding rape convictions should not merge.

Please note:

The court has recorded its own entry on the date of the release of this opinion.