[Cite as *State v. Curtis*, 2016-Ohio-1318.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150174 |
| | | TRIAL NO. B-1401226 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| FRANK CURTIS, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, Sentences Vacated in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  March 30, 2016


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**MOCK, Judge.**

{¶1}    After a jury trial, defendant-appellant Frank Curtis was convicted of murder with a specification, aggravated robbery, carrying a concealed weapon, and having a weapon while under a disability. He was acquitted of one count of aggravated murder with specifications and a second count of aggravated robbery with specifications. The trial court sentenced him to 15 years to life for the murder count, one year for the accompanying specification, 11 years in prison for the aggravated-robbery count, 18 months for carrying a concealed weapon, and three years for having a weapon while under a disability. The trial court ordered Curtis to serve those sentences consecutively, for a total of 31 and one half years to life in prison.

{¶2}    In five assignments of error, Curtis appeals his convictions and sentences. He first argues that his convictions were based on insufficient evidence or were contrary to the manifest weight of the evidence. He next argues that his trial was unfair due to prosecutorial misconduct. Curtis's third assignment of error alleges that the trial court improperly ejected certain spectators in the presence of the jury. He then argues that the trial court should have declared a mistrial when the jury indicated that it was unable to reach a verdict. Finally, he claims that his sentences were improper. For the reasons set forth below, we conclude that part of his sentence was improper. We affirm in all other respects.

### Afternoon Auto Repair Turns Deadly

{¶3}    On the afternoon of March 7, 2014, Markisha Chatman picked up her cousin Daryl Chatman to drive him to a car dealership so he could purchase a car. Daryl had $2,300 in cash for that purchase. While driving to the dealership, Markisha's car began to shake. Since they were in the area of the place where she usually had her car

serviced, she drove to the repair shop at the intersection of Hamer and Back streets in Over-the-Rhine.

{¶4} While there, Markisha listened to music in her car and Daryl started playing dice with someone Markisha later learned was named "B Bran" or Brandon Kaiser. After playing a few rounds, Brandon left and Daryl started playing with someone else. After Brandon left, a man that Markisha knew as "Three" walked up to the group. Markisha had known "Three" for years from the neighborhood, and because he worked with her brothers at a local gas station. Markisha later identified "Three" as Curtis. Curtis shook hands with several people around the garage, but did not directly engage Daryl. He walked around the corner and disappeared for a few minutes before returning to the group. This time, Curtis approached Daryl and produced a handgun. He demanded that Daryl give him the money. When Daryl refused, Curtis fired a single shot into Daryl's chest. After Daryl fell, Curtis took the money from the ground and Daryl's hand, and fled. Daryl was pronounced dead at the scene.

{¶5} Edonia Anderson, a friend of Markisha, also testified that she witnessed the events of March 7. She testified that "Three" had a pistol in his hand when he approached Daryl as he shot dice with "B." She also said that "Three" and "B" were often together in the neighborhood. She said that "Three" told Daryl that "[y]ou know what time it is, give it up." She said that Daryl responded by saying "[b]ro, you better go on with that," before smacking the gun away. Edonia said that "Three" then fired into Daryl's chest, grabbed the money, and left. She also said that, although other people were playing dice at the time, only Daryl was targeted for robbery. Edonia also testified that her brother had witnessed the shooting. But he did not give a statement to police, and he had been killed by the time the trial in this case began.

{¶6}    Salina Dean was also interviewed by police.  She initially told them that she had witnessed the shooting.  Before being called to testify, however, she informed prosecutors that she had not witnessed the shooting, but was relying on an account of the incident she had heard from her cousin, Jarielle Dean.  Upon learning that Salina had not actually witnessed the shooting, the state declined to call her as one of its witnesses.  Counsel for Curtis did call her as a witness for the defense, and attempted to challenge the details of her account, but she insisted that her version was exactly what Jarielle had relayed to her.  Jarielle was also unable to testify because he had been shot and killed before the trial.

{¶7}    The state also called a witness who testified about Curtis's cell phone activity.  The witness was able to testify that Curtis's cell phone was in use in the area of the shooting at the time of the shooting.  Testimony also confirmed calls between Curtis's phone and a phone belonging to Brandon Kaiser before and after the shooting.  The state also called a state parole officer to testify that Curtis's brother was in prison at the time of the shooting, in order to refute Curtis's argument that witnesses had mistaken him for his brother.

{¶8}    Curtis was charged with aggravated murder with specifications, in violation of R.C. 2903.01(B); murder with specifications, in violation of R.C. 2903.02(B); aggravated robbery with specifications, in violation of R.C. 2911.01(A)(1); aggravated robbery, in violation of R.C. 2911.01(A)(3); carrying a concealed weapon, in violation of R.C. 2923.12(A)(2); and having a weapon while under a disability, in violation of R.C. 2923.13(A)(2).  After a jury trial, he was convicted and sentenced. Asserting five assignments of error, Curtis now appeals.

### Convictions Based on Sufficient Evidence and
### Not Against the Weight of the Evidence

{¶9}     In his first assignment of error, Curtis claims that his convictions were based on insufficient evidence or were against the manifest weight of the evidence.  In reviewing a challenge to the sufficiency of the evidence, this court must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.  *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  In addressing a manifest-weight-of-the-evidence challenge, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. *Id.* at 387.

{¶10}  Curtis's convictions for murder, aggravated robbery, carrying a concealed weapon, and having a weapon while under a disability were based upon sufficient evidence and were not against the manifest weight of the evidence.  Markisha had known Curtis for many years, she clearly identified him as the shooter, and there is no evidence in the record that would provide a motive for her to lie about his involvement in her cousin's death.  Edonia identified him as well.  While Curtis has highlighted inconsistencies in the testimony of the state's witnesses and has pointed to how their versions differed from what they had told police initially, we cannot conclude that these inconsistencies and changes rendered the testimony so unreliable or unworthy of belief that the jury lost its way and created a manifest miscarriage of justice in finding Curtis guilty of the offenses. *See Thompkins* at 387.  As the trier of fact, the jury was in the best position to judge the credibility of the witnesses.  We overrule the first assignment of error.

**No Actionable Prosecutorial Misconduct**

{¶11}   In his second assignment of error, Curtis claims that the prosecutor engaged in misconduct by relying on testimony that was false, misstating evidence during closing argument, denigrating defense counsel, and improperly asking the jury to stack inferences.  We find no improper conduct.

{¶12}   First, Curtis claims that the state improperly elicited testimony from Edonia that she was with Salina when the incident occurred, even though Salina had admitted that she was not there.  But the testimony cited was actually elicited during cross-examination.  The statement from Edonia that she and Salina arrived at the scene together was actually part of the statement that Edonia gave to police, and upon which Edonia was being cross-examined by defense counsel.  It was not part of the testimony given in response to direct questioning by the state.  Therefore, it cannot serve as the basis for a claim of prosecutorial misconduct.

{¶13}   Curtis next claims that the prosecutor misstated evidence during closing argument when he stated that the phone information was "better than DNA."  He also claims that the state denigrated defense counsel during closing argument.  When judging a prosecutor's comments in closing argument, they must be reviewed in the context of the entire case and the entire argument.  *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (1st Dist.1992).  The hyperbolic reference to the phone evidence being better that DNA simply does not rise to the level of requiring a reversal of Curtis's convictions, in the context of the otherwise appropriate discussion of the evidence.  And isolated references to defense "tactics" are likewise not enough to require reversal.  A criminal conviction will not be lightly overturned on the basis of a prosecutor's comments standing alone.  *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985).

6

{¶14} Finally, we do not think that the prosecutor improperly asked the jury to stack inferences. Parties have wide latitude in their closing statements, particularly "latitude as to what the evidence has shown and what inferences can be drawn from the evidence." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 213. On this point, Curtis references the portion of the closing argument in which the state suggested that Brandon and Curtis were working together to commit the robbery. But the record contains sufficient evidence to support that inference. Brandon played dice with Daryl and, when doing so, had occasion to see that Daryl had a significant amount of cash. Brandon and Curtis called each other both before and after the robbery. Curtis robbed only Daryl, indicating that someone had singled him out. And Brandon and Curtis were known to hang around together in the neighborhood. This was enough evidence to permit the state to suggest in closing argument that the two men were working together. *See State v. Stober*, 3d Dist. Putnam No. 12-13-09, 2014-Ohio-1568, ¶ 135.

{¶15} We overrule Curtis's second assignment of error.

### Ejecting Sleeping Spectators Not an Abuse of Discretion

{¶16} In his third assignment of error, Curtis claims that he was improperly prejudiced when the trial court ejected two spectators from the gallery shortly before delivering the jury instructions. The trial court ejected the spectators because they were sleeping in the courtroom. The trial court did not abuse its discretion.

{¶17} Under R.C. 2945.03, "the judge of the trial court shall control all proceedings during a criminal trial." This court has said that the trial court, "in limited circumstances, has discretion to order the exclusion of spectators. So the court may order the exclusion of spectators so long as it does not inappropriately deny the

7

defendant's right to a public trial." *State v. Morris*, 157 Ohio App.3d 395, 398, 2004-Ohio-2870, 811 N.E.2d 577, ¶ 13 (1st Dist.). The "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *State v. Sewell*, 10th Dist. Franklin No. 06AP-443, 2008-Ohio-3285, ¶ 39, quoting *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

{¶18}   In this case, the spectators were ejected from the courtroom while the jury was present. While it may be a better practice to excuse the jury temporarily, there was no indication in the record that the jury knew that the spectators were there in support of Curtis. While counsel did suggest to the trial court that spectators sympathetic to Curtis were all sitting on the same side of the courtroom, there was no indication that the jury knew this. The trial court did not close the courtroom entirely, nor did it exclude any spectators other than the two that were sleeping. There is no indication that Curtis suffered prejudice by the way that the trial court handled the situation. Therefore, we overrule Curtis's third assignment of error.

### Failure to Declare a Mistrial Was Not an Abuse of Discretion

{¶19}   In his fourth assignment of error, Curtis claims that the trial court abused its discretion when it failed to declare a mistrial when the jury reported that it was unable to reach a verdict. We disagree.

{¶20}   The decision to grant a mistrial is left to the discretion of the trial court and will not be overturned without a showing that the court abused that discretion. *State v. Iacona*, 93 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987). Likewise, the decision to allow a jury to continue to deliberate is a discretionary decision for the trial court. *State v. Holland*, 1st Dist. Hamilton No. C-930140, 1993 Ohio App. LEXIS 5935 (Dec. 15,

1993).  Mistrials need only be declared when a fair trial is no longer possible.  *State v. Herring*, 94 Ohio St.3d 246, 254, 762 N.E.2d 940 (2002).

{¶21}  Jury deliberations began in the afternoon of Wednesday, January 28, 2015.  In the morning of Thursday, January 29, the jury asked for some supplies for note-taking and for copies of exhibits that they could mark on.  They then deliberated for the entire day.  In the morning of Friday, January 30, the jury asked the trial court for suggestions on how to reconcile differences generally when reaching a verdict.  The note did not explain what the differences were and did not indicate that they were deadlocked.  The trial court instructed the jury pursuant to *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989).  Counsel for Curtis did not object to the instruction.  The jury later asked for a copy of that instruction, which the trial court provided without objection.  After deliberating through midday, the jurors were dismissed for the weekend.

{¶22}  After a hour of deliberation on Monday, February 2, the jurors indicated that they were having trouble reaching a verdict.  They were again instructed pursuant to *Howard*, with additional instructions pursuant to *State v. Martens*, 90 Ohio App.3d 338, 343, 629 N.E.2d 462 (3d Dist.1993).  The jury then deliberated for the remainder of the day.  On the morning of February 3, the jury asked the trial court to explain the difference between preponderance of evidence and reasonable doubt, asked for a copy of the *Howard/Martens* instruction they had received the previous day, the testimony of Markisha Chatman, and a copy of the juror's oath.  Shortly after 3 p.m. that afternoon, the jury reported that it had reached verdicts on all counts.

{¶23}  The *Howard* charge is a supplemental instruction for the court to give a deadlocked jury to encourage the jurors to reach a verdict.  *Howard* at 18.  "To avoid the pitfall of coercing a guilty verdict from an otherwise deadlocked jury, the supplemental

9

jury instruction must advance two goals: it 'must encourage a verdict where one can conscientiously be reached,' and it 'must be balanced, asking all jurors to reconsider their opinions in light of the fact that others do not agree.' " *State v. Carson*, 1st Dist. Hamilton No. C-040042, 2005-Ohio-902, ¶ 48, quoting *Howard* at 25.

{¶24}    Curtis argues that the jury was clearly divided and that instructing them to continue was coercive.  We disagree.  The jury had deliberated for over a day before it first indicated that it needed guidance on how to reconcile differences.  After receiving the *Howard* instruction, they deliberated for half a day, went home for the weekend, and deliberated on the following Monday morning before indicating to the trial court that they were having trouble reaching a verdict.  As the state noted below, this was actually the first time that the jurors specifically indicated that they were having trouble reaching a verdict.  After being instructed, they returned to their work through the end of that day.  After receiving a copy of the instruction and other materials the next morning, they deliberated for six more hours and reached a verdict.

{¶25}    On this record, we find that the trial court handled the situation appropriately and we perceive no potential for coercion created by the trial court's action.  Thus, we find no abuse of discretion by the court on the basis of the *Howard* charge, and we find no ground for a mistrial.  Accordingly, we overrule Curtis's fourth assignment of error.

### Murder and Aggravated Robbery
### Convictions Must Merge

{¶26}    In his final assignment of error, Curtis claims that his murder, aggravated-robbery, and weapons convictions should merge as they are allied offenses of similar import.  As that argument relates to the murder and aggravated-robbery charges, we are constrained to agree.

10

{¶27} Under R.C. 2941.25, a trial court must merge offenses if the conduct of the defendant can be construed to constitute two or more allied offenses of a similar import, and this conduct shows that the offenses were not committed separately or with a separate animus. *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 74. The determination of whether offenses are allied contemplates "three separate factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus ("*Ruff II*"). Separate convictions are permitted for allied offenses if the offenses were (1) dissimilar in import or significance, (2) committed separately, or (3) committed with a separate animus or motivation. *Id.* at paragraph three of the syllabus. A reviewing court may end its analysis upon finding that any one of the three applies. *Bailey* at ¶ 83.

{¶28} The facts of this case are relatively simple. Curtis approached Daryl, produced a handgun, and demanded money. When Daryl refused, Curtis fired a single shot into his chest. After Daryl fell, Curtis took the money from the ground and Daryl's hand, and fled. Under these facts, it cannot be said that the murder and aggravated robbery were committed either separately, or with a separate animus or motivation. The only way, therefore, that the counts would not merge would be if they were offenses dissimilar in import or significance.

{¶29} This court has addressed the issue of when counts are of dissimilar import or significance. *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367. In *Ruff*, we concluded that rape and aggravated burglary were not offenses of dissimilar import or significance when the rape constituted the aggravating physical-harm element of the aggravated-burglary charge under R.C. 2911.11(A)(1). *Id.* at ¶ 17, citing *Ruff II* at ¶ 17. In so doing, this court held that where conduct that constitutes one offense causes a harm that is not separate and identifiable from the

11

harm caused by the aggravating element of another offense, then the offenses are of a similar import. *Id.* at ¶ 18.

{¶30}     In this case, Curtis was convicted of murder and aggravated robbery under R.C. 2911.01(A)(3), which requires proof of the additional aggravating element of inflicting, or attempting to inflict, serious physical harm.  The only serious physical harm that Curtis inflicted on Daryl was the single gunshot to the chest that was almost immediately fatal.  The state argues that the aggravated robbery was complete when Curtis brandished the weapon and demanded money.  But that would only have been true if he had been convicted of aggravated robbery pursuant to R.C. 2911.01(A)(1). While Curtis may have been guilty of robbery at that point, he had not violated R.C. 2911.01(A)(3) until he shot Daryl.  Pursuant to this court's holding in *Ruff,* the trial court should have merged those counts.

{¶31}     Curtis also argues that his convictions for having a weapon while under a disability and carrying a concealed weapon should also have been merged by the trial court.  But this court has held that those charges do not always merge.  *See State v. Garnett,* 1st Dist. Hamilton No. C-090471, 2010-Ohio-3303, ¶ 20, citing *State v. Rice,* 69 Ohio St.2d 422, 433 N.E.2d 175 (1982); *see also State v. Finnell,* 1st Dist. Hamilton Nos. C-140547 and C-140548, 2015-Ohio-4842, ¶ 74, citing *State v. Bates,* 1st Dist. Hamilton No. C-140033, 2015-Ohio- 116, ¶ 30.  And they do not merge in this case.

{¶32}     The fifth assignment of error is sustained in part and overruled in part.

**Conclusion**

{¶33}   Because the trial court should have merged the murder and aggravated-robbery counts, we reverse its judgment in part and vacate the sentences imposed on those counts.  We remand this cause to the trial court with instructions to allow the state to elect which allied offense it will pursue for purposes of conviction and sentence.  In all other respects, we affirm the judgment of the trial court.

Judgment affirmed in part, reversed in part, sentences vacated in part, and cause remanded.

**FISCHER, P.J.**, concurs.
**STAUTBERG, J.**, concurs in part and dissents in part.

**STAUTBERG, J.**, concurring in part and dissenting in part.

{¶34}   I respectfully dissent from the majority's opinion and judgment with respect to Curtis's fifth assignment of error.  I otherwise concur in the majority's opinion.

{¶35}   While I am mindful of this court's decision in *State v. Ruff*, 1st Dist. Hamilton Nos. C-120533 and C-120534, 2015-Ohio-3367, I am also mindful of my dissent therefrom.  In addition, I believe the Ohio Supreme Court's decision in *State v. Earley*, ____Ohio St.3d____, 2015-Ohio-4615, ____N.E.3d ____, sheds further light on the approach we should take in analyzing questions regarding merger.  In *Earley*, the court held:

> [A] trial court may impose cumulative sentences for both aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a) and operating a motor vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a) when the offense of operating a vehicle while under the influence is the predicate conduct for aggravated vehicular assault.

*Id.* at ¶ 21.

13

{¶36}    I disagree that because the harm for which Curtis was convicted under R.C. 2911.01(A)(3) also caused the death of Daryl Chatman, the murder must merge with the aggravated robbery.  The import and significance of murder, causing the death of another, is quite different than the import of aggravated robbery, a theft offense. *Compare* R.C. 2903.02(B) and 2911.01(A)(3).  Indeed, Curtis could have been convicted of aggravated robbery merely by inflicting serious physical harm while committing the theft offense.  The murder of the victim was not a requisite element.  The fact that the harm that resulted in the murder charge is also the predicate conduct for the aggravated robbery charge should not automatically result in merger.  *See Earley, supra.*  I therefore dissent with respect to the fifth assignment of error, but otherwise concur in the majority opinion.

Please note:

The court has recorded its own entry on the date of the release of this opinion.